This video was made in Cooperation with the U.S. Embassy in the Philippines. No part of this recording may be reproduced without Master's Permission. Thank you for watching. When you're ready, Mr. Barney. Thank you, Mr. Court. The Board erred in overturning the examiner's decision to sustain Claims 26 and 28 over the Bennett reference. There's no embodiment in Bennett that stores a value that is representative of the amount of time that transpired between the receipt of an operation code and the delivery of data in response to that operation code. There are two configurations in Bennett, however, and they result in different delay times. Is that enough under this claim? Your Honor, I believe you're referring to perhaps Figures 25A and B of Bennett, which I could certainly address directly. I think that's correct. That was the heart. That's exactly what I'm looking at, 25A and B. Correct. That was the heart of the Board's decision, and the Board's focus on the fact that there was a one-clock cycle delay, excuse me, one-clock cycle difference between Figures 25A and B in Bennett, which it attributed to a stored delay time. What you need to understand about Figure 25 of Bennett is for each of the eight timing diagrams in that figure, they show one hypothetical type of transaction that can occur across that particular bus configuration. In reality, of course, there will be hundreds of thousands, if not millions, of transactions going across those bus configurations every second, because these are very high-speed devices. And not all of those transactions are going to look like the hypothetical transactions illustrated in those timing diagrams. That's because the timing diagrams in Figures 25, including Figures 25A and B, have been simplified for illustration purposes to show only the effect of pipelining or multiplexing on the generic timing. In other words, all of the other factors that could potentially affect timing, such as arbitration losses and retry conditions, have been stripped away in those figures so that they only illustrate the effect of pipelining or multiplexing on the generic timing. That's the purpose of Figure 25, so it's not a surprise that you would strip away those other factors. You'd be choosing between these two Bennett configurations for reasons other than delay time, too, wouldn't you? The faster system is the B system, and you get a limited number of pins from the A system, right? Those would be the reasons you'd be choosing between the configurations. Am I correct on that? I think, in general, you're correct. The whole purpose of Figure 25 is to show that you can start with a fully multiplexed system, which is going to be, as you say, slower, but less pin-dependent, and you can move from that system all the way to what's illustrated, I think, in the eighth figure in 25, with a fully pipelined system, faster but more pin-dependent. You need more pins to run that system. But the important takeaway is that just because you've illustrated one particular hypothetical transaction in these figures does not mean that every transaction that occurs across the bus is going to look like that. But for anticipation, we'd really only need to find one if it really did anticipate. Is that correct? Contain each and every feature? I don't think that's correct, Your Honor, and I believe that's where the Board went wrong. The Board seemed to acknowledge, if I could just, for a moment, talk about Figure 35. The Board seemed to acknowledge that in Figure 35, because you have arbitration losses and you have retry conditions, the amount of time to transpire between receipt of an operation code containing a read request and the delivery of data is going to be indeterminate. But the Board said, well, sometimes you might have a transaction that actually does look like what's shown in Figure 25a and b. For instance, if you have a transaction where there's no delay time before the arbitration, there's no arbitration losses, and there's no retry conditions, then hypothetically, you could have transactions that look like Figure 25a and b. And the Board said, that's enough. That's enough for anticipation. But we would submit that's an incorrect construction of the word representative. As the word representative is ordinarily used, and as it's clearly used in this patent, in order for one value to be representative of another value, it has to consistently stand for that second value. It can't be a matter of chance or happenstance. As an example, the minute hand of my watch is not representative of the amount of change in my pocket at any given time, even though on occasion they may correlate, there's no actual relationship between those two pieces of information. You think they've interpreted representative to be indirectly linked or affecting? Your Honor, I don't want to try to crawl inside the mind of the Board, but I think the Board… They used at one point the term indirectly, right? Right. I think the Board misunderstood what Figure 25 is actually showing, because it consistently referred to it as an embodiment. And to be fair, what Figure 25a and b are, are transactions. They are transactions occurring across a particular embodiment. But the figure itself is not a, quote, embodiment. It's one hypothetical transaction taking place on an embodiment. If I understand your representative argument, it is, correct me if I'm wrong, it is that Bennett doesn't disclose representative because it doesn't have a time that corresponds to the start and end times of the delay cycle or the clock ticks the way that this patent does. So I guess I feel like your argument is a little bit circular, and I don't mean that in a derogatory way. I mean whether or not Bennett discloses a representative value hinges on my accepting your start and after definitions, it seems to me. It seems that these are intertwined or linked, and it all stands or falls, as best as I can tell, based on whether I agree with you that Claim 26 requires the start to be immediately after the read response and the after to hinge on an immediate transfer of output data. So the time that we're talking about, it seems to me, and Bennett, whether it discloses it hinges on your arguments regarding start and end time. Am I wrong? Judge Moore, I think you're correct, but although I'd like to expound on that just to make sure that I understood your question. I think you're correct. So as an alternative claim construction, the Board analyzed the case under the claim construction that we think is correct, which is that the start time is the receipt of the operation code and the end time is the delivery of data. That was the Board's primary analysis. Now I made a factual error there because it assumed that Figure 25A satisfied that condition, because it misunderstood what those figures are actually representing. I thought the Board made rejections under both of those claim constructions. I remember them saying that the patent isn't clear about what triggers and yada, yada. I didn't see them accepting your constructions at all. Well, Your Honor, the Board posited that as an alternative. It said even if our argument is right, the claim is not clear where the starting point is. It gave that as an alternative construction. The actual main construction the Court used assumed the start time being the receipt of the operation code and the end time being the delivery of data. Can you show me where that is true? Because I didn't understand that. I would point to, as an example, A14, which is in the decision on appeal. The Board reaches the starting point issue after it's already concluded. Where? So I'm on the second paragraph after the word moreover. The second paragraph begins with the word micron. Oh, A14. A14. Not 14 of the decision. I'm sorry. Moreover. Claim 21 fails to specify. So my only point here, Your Honor. So don't they actually affirmatively reject the construction that you're advocating? I'm not saying they're right to reject it, but you started by saying, oh, no, they adopted our constructions. They both start and end time. And I thought, dear Lord, why are you saying that? Well, my only point, Your Honor. Because they've rejected it, and I don't necessarily think it's wrong. So I'm trying to figure out what you're talking about. My only point is that the Board first analyzed the claim under the idea that the start time is the start of the read request and the end time is the delivery of data. And according to the Board, figures 25A and B were sufficient to satisfy that. And then it went on on the next page after moreover to say, moreover, there's a lack of clarity about the start time. So my only point is it addressed that as an alternative construction. Now, that alternative construction, we believe, is wrong, as is the Board's implicit construction of representation. Now, the Board tells us that they think this is within a broadest reasonable interpretation. Yes, that is actually incorrect because this patent expired. I think that's been cleared up on several of the other re-exams in the same family. Because this patent expired during the course of the re-examination, the proper claim construction to apply is not broadest reasonable, but it's actually the Phillips analysis. Would you argue that it's not reasonable to go as broad as they did anyway? I would argue that that construction is improper under any claim construction methodology. Now, getting to your point, Judge Moore, in terms of where the starting point is, we think the claim makes absolutely clear in the context of the claim, particularly the last limitation of Claim 26, that the starting point is the receipt of the operation code. That last limitation discusses response to the operation code, delivering the data and... But here's the problem. You can send me an email and I can respond to it, but I don't have to respond to it immediately, right? I am in response to your email, but I might do it an hour or two later after court. Right. So it's the immediacy that is the problem for you. It's the context of the claim and the invention. It's very clear from the context of the invention that when they say, deliver data after the delay time, they're talking about immediately after. It's like if I tell my kids to take the cookies out of the oven after 20 minutes, it's universally understood to take them out after the 20 minutes expires, not hours later. And the invention simply would not work if the amount of time that transpires is essentially indefinite, because the whole idea of the invention is I make a transaction. No, sure they would work. It's not that the amount of time is indefinite. It's that the bus is only going to be promised to be unused during a critical period of time and after doesn't pertain to when the bus is unused. After pertains to when the output data is later sent. That could, of course, occur at some point later. You could buy yourself some extra time because maybe it's going to take extra time to upload or do something else. But if I'm the requester, I'm the master, the bench is the bus, and you are a memory device, if I ask you to perform a read operation and deliver the data in two clock cycles, after two clock cycles, the only way the invention is going to work... No, it doesn't say deliver the data after two clock cycles. It says deliver the data no sooner than after two clock cycles. Well, that's Micron's argument, and by the way, that is not anything that the board analyzed. That wasn't part of the board's analysis. That's an argument that Micron has come up with on appeal. But again, the invention would not work. I don't even understand why you address this whole after thing in your brief. You guys did. You say that's Micron's new argument, but you're the one who set it out. The board didn't reach a construction on after, but in your brief, you're arguing quite vociferously that after has got to be defined as blankety, blankety, blank. And I'm like, why? You don't even need that to win on your anticipation argument, but nonetheless, you're asking for it. So it doesn't surprise me that they came in and said... Micron brought it up in the red brief, so we addressed it in the gray brief, Your Honor. It was addressed in our gray brief in response to their argument. But you're telling me it's not in the blue brief that you think after means that it is sent immediately at the end of the lag time. I think that that is the correct construction, but that wasn't a basis for the board's decision to find anticipation. I mean, that is the correct construction. After means the time at which you deliver the data. You actually say that the data is sent at the, quote, moment the time transpires in your brief. So I think that you certainly, in your blue brief, are making the argument whether it was... Even though there wasn't a claim construction on this below, I think that you opened the door and they've got to... Why, how can they not respond? You're advocating for an affirmation of a claim construction. Your Honor, I do believe that is the correct construction. I think that is the proper reading of the claim. Why? In column 16, you indicate an embodiment at column 16, thus an access value of one. I'm sorry, I'm at line 10 in column 16. I want to give you a chance to get there. Thus an access value of one would indicate that the slave should not access the bus until at least two cycles after the last bite of the requested packet has been received. So it clearly anticipates an embodiment in which it isn't sent back the moment the time expires, but rather is sent back no earlier than when the time expires. Because you say at least, leaving open the possibility that more time could transpire before it's sent back. That is the language that Micron points to in support of that argument. There are many other instances in the patent, and I would point you, for instance, to column 7, lines 2 through 5, where it's referring to the fact that the slave that the packet is directed to must then begin any internal processes needed to carry out the requested bus transaction at the requested time. Most of the instances that are discussed in the specification refer to it in that sense, that it's at a specific requested time, which is basically at the end of the delay time. I completely agree with you that you have an embodiment in which it happens immediately, but the problem is you have another embodiment in which it is not required to happen immediately, expressly not required to. So why do we then construe the claim as pertaining to the first and not the second embodiment? Your Honor, again, I go back to my cookie example. There is a connotation when somebody says do something after X amount of time, there is a logical connotation in context that you do it at that time, not some indefinite time later, and I believe that's what the claim is referring to. So if somebody were infringing and they didn't do it immediately, they delayed an extra two clock cycle just because they wanted to avoid infringement of your claim, would you really not be standing here saying it still occurs after, Your Honor, it occurs two clock cycles later than the delay period, but it's definitely after the delay period? It would depend on whether the total delay period is still being represented by the stored value. The problem in Bennett is that the amount of time that expires afterwards is completely unpredictable. It could be any amount of time. One last thing. You want me to adopt a definition of after which requires immediacy, right? That's what you're asking for, immediacy, like the data has to be outputted right after, immediately after. Yes. Okay, but the word after is the only word that appears in the claim, right? Correct. Okay, so now let's look at column 16, line 63. I did a search for after everywhere the word appears in the specification. It doesn't appear very often, but here's a place where it does. So this is after, so you wait a selected access time, then drive its data onto the bus right after. Right after. So they knew that the word after didn't necessarily, in all cases, connote immediacy, because if it did, why would they then say in the specification right after? What's the point? Your Honor, I would go back to the way that the invention works. It wouldn't operate correctly unless the master knew at the time that a request was delivered when the exact time is that the data is going to be delivered in response to that request. Why? Because the whole idea of the invention is that you're building a delay period so that you can interleave transactions. But you would still have efficiency during the delay period. You know there's a period when the bus is not going to be used and the controller can use it efficiently because there's no competition for it. What does it matter whether or not the output comes back immediately at the end of that time period or two clicks later after that time period? It has to come back at a time that's knowable by the master and all the other devices on the bus. Otherwise, and we... Why? What about the plans required that? Because otherwise when I went to go sample the bus at some other time, I would have no idea if that's the data that I originally requested from you. If I ever have a transaction request and I say deliver the data in two clock cycles and I come back in two clock cycles, I have to know that that is the data that I originally requested from that memory device. If there is some arbitrary time in the future that the data is going to be delivered, I wouldn't know when to sample the bus for that data. Could we move on and hear Mr. Petrie? Yes. We'll give you two minutes of your rebuttal time back. Give Mr. Petrie an extra two if he needs it. Good morning, Your Honors. May it please the Court. Substantial evidence supports the Board's finding that claims 26 and 28 of the 916 patent are anticipated by Bennett. There are two basic problems with Rambas' arguments on appeal. First, they disregard the rule that a reference anticipates even if only a single embodiment meets the elements of the claims. Here, figures 25A and B anticipate, even under Rambas' narrow interpretation of what this time to transpire. Do 25 and 26 show representation as it's required in the claim? Absolutely, they do, Your Honor. As the Board found, as we explained in our brief, Bennett has this configuration register that's shown in Figure 3. It has a number of parameters where you can store different values in, and that will affect how the bus behaves. As the Board found... It will affect how the bus behaves, but that's the problem. It's not representative of the time value. This is like a broken clock is right twice a day. No, it's actually not, Your Honor. It has a direct effect on the delay that results in the transaction. It has an effect on the delay, but it isn't representative of the time value. And it is representative. How? That's right. How do you select the time as you do in the claims invention? Because as the Board found in Figure 25A, if you put a value of 1 in the register for parameter 6, the total transaction time is 4 clock cycles. If you put a 3 in the register for parameter 6, the total transaction time is 3 clock cycles. So changing the parameter from a 1 to a 3, it changes the total transaction time from 4 clock cycles to 3 clock cycles. But doesn't that represent when the request is made to begin a transaction? It doesn't indicate when the transaction is supposed to end. What that indicates is that it meets the claim limitation that the register stores a value that's representative of an amount of time to transpire after the memory device outputs the first amount of data. And I think the question might get to this other issue. The second major problem with their argument is that they're trying to read an additional limitation into the claim that the amount of time to transpire means the exact amount of time from the receipt of the read request to the output of the data. And that's not in the claim. All it requires is an amount of time to transpire after which the memory device outputs the first amount of data. And as the board found, that's what figures 25A and 25B show. When you change the value in the register, you change the total transaction time. So that value in the register represents the amount of time after which the memory device outputs the first amount of data. Now, one of their main points in the rates that have been here is that what's shown in the figures... Does BINIT actually work the way figure 25A and figure 25B represent? Does it actually work that way? That's one of their arguments, that that's not a real-world memory device and it's just a simplified presentation. But one of the things to keep in mind is that BINIT was relied on by the board not as evidence of some existing product that was on sale or in public use. BINIT is a patent, and so whatever it describes can be used for anticipation purposes. So if any of the embodiments in BINIT meet the limitations of the claim, then they anticipate, regardless of whether they're simplified presentations. But the value in parameter 6 dictates the configuration, and that incidentally affects the time. It doesn't represent the time. You don't even select the configuration based on timing considerations, right? I actually would disagree. I think a fair reading of BINIT is that the value in the register dictates the time delay where the data will be output. And that's the purpose of having that in there. But it dictates, again, I mean you just keep saying the same thing. It dictates the delay, it affects the delay, but it isn't representative of the delay. It is representative of the delay because what BINIT is trying to do is put a value of 1 in the register, and that delays the data by one clock cycle. But the board doesn't even say that. The board calls this indirectly indicating a number of clock cycles. They don't even try and say they're representative. Well, no, the board actually does. Then they will try to drag in representative after indirectly by saying, well, it's the broadest reasonable claim construction, and then we'd have to argue about whether that's reasonable or not. Well, I actually disagree that this construction is just based on broadest readable interpretation. I think it is also based on what's taught in the specification of the 9-1-6 patent. But the board found that figures 25A and 25B, in fact, show that what the value stored in that register, there is a value that represents. I'm reading from the board's opinion. The sixth parameter, one or three, indirectly indicates a relative number of clock cycles that transpire. Indirectly indicates. They're not saying it's representative. Well, it is. In other words, just as Judge Moore pointed out, you were more accurately reflecting the board's decision when you did say, with your broader terms, it affects it or it controls it, but not that it's representative of it. I apologize. I don't recall exactly what I said, but I think the board's decision, they did find that if you look at figures 25A and compare it to 25B, that the value in the register actually represents the amount of time it transpires. But there can be other types of delay, right? Like arbitration. There could be. However, the way that... If there is another delay, like arbitration, then that changes what figure 25A and 25B depict. But not... Okay, what I'm saying is there could be, and what they're saying is a real-world memory transaction and all that, but that's not what Bennett described as to what's shown in figure 25A. Where does the board, by the way, say that it's representative? I've read it over. They indirectly dictate corresponding is another way they say it. Where do they say it actually is representative? I don't know, Your Honor. I would have to go back and look. They seem to be quite honest in saying that it corresponds or it's indirect. They don't find it representative. But I would argue that still meets the definition of what representative is, under like, for instance, the Tirani case. It's directly related to, stand for, or be a reasonable proxy for the latter item. So the value of parameter 6 in the register is at least a reasonable proxy for the amount of time to transpire. Now regarding the arbitration issue, Bennett states as to figure 25 that arbitration lasts only one clock cycle. So arbitration in that context is one every time, so there's no extra arbitration involved with figure 25. Can you tell me how you feel, what your arguments are related to the time period and whether or not this claim requires the value and the time period to begin immediately upon sending the read and to have the output come back immediately at the end? Sure. Do you believe that that's necessary for us to decide or for this to be resolved? The reason that Rambis is trying to read that limitation into the claim as to what the specific amount of time to transpire is, is because they say that figure 35 in Bennett is a real world memory transaction and now they're trying to insert this claim limitation into the claim to avoid that real world memory transaction. But that's inconsistent with both the claim language and what's taught in the 916 specification. If you look at the claim itself, the first time this amount of time to transpire occurs is in that register limitation. And all that says is it's a register which stores a value that is representative of an amount of time to transpire after which the memory device outputs the first amount of data. There's nothing in that element that says when the amount of time starts to run or how long it is. But what doesn't it say after which the memory device outputs the first amount of data, although I question your opponent quite strongly on it, I'm not certain he's wrong. Well, actually, if you want to say that it's precisely at the end of the expiration of the amount of time, that's inconsistent with what the specification teaches. And that is... Well, it's not inconsistent with what the specification teaches. The specification teaches, as he points out, an exact embodiment that does do it immediately at the conclusion of. So it's not inconsistent with, you're just suggesting the specification has other embodiments? I'm saying to read that limitation into the claims in consistence with what's shown in the specification, because the specification is actually broader. When it's referring to this amount of time, in a number of places, as we cited in our brief at pages 15 to 16, it talks about the specific time is just preferred. It's not required. And as Your Honor had mentioned at column 16, lines 10 to 13, it just says that an access time of one would indicate that the slave should not access the bus until at least two cycles after the last bite of the request. Well, their argument is that's not a claimed embodiment. Well, it's not. But the claim doesn't say how long after the amount of time transpires when there's the output of the first amount of data. I guess the question is what is the plain meaning of after, right? And isn't the plain meaning in the context of this claim immediately thereafter? I mean, that's the only way to maximize the efficiency that was created by this invention, which is to have a period of time during which the controller knows it can freely use the bus because it's not going to be competing demand. But those purposes and uses and interleaving and all that, none of that's recited in the claim. All the claim recites is that there's an amount of time to transpire after which the memory device outputs the first amount of data. And they even contemplate it. You say none of the purposes or uses are expressed in the claim, but I have to construe what the word after means in the context of this patent. Quite frankly, and perhaps it's the military style in which I raise my children, but if I tell them, come over here after you're done with that, I expect them at my feet the minute they're done with it. And maybe that's unique to me, but I do tend to think that is the plain meaning of the word after. And so I guess if there's more than one plain meaning, don't I look to the spec to figure out what it is? And I think that might, like Your Honor says, yes, that could be one plain meaning. And I think you respond to an email after a certain period of time. But this whole patent is designed to save time in the computational cycles, right? That's what they claim now. You question that? Well, yes. They say that it saves time in the overall grand scheme of things if you're able to interleave the different transactions. That's what the patent is. It is all designed to do, right. And it was granted. Thank you. But I think it's important to focus on what the actual claim language is. And if there are different meanings of the term after, well, they should have clarified that when they filed the application and put the claim in. And they could have said immediately after the amount of time transpires or something like that. Because it's on my mind, do you have standing? On the priority issue? Do you have standing to be in an Article III court? Yes. You ought to think about that a little. Where is your direct and immediate injury? I'm not exactly sure. The statute allows Micron to appeal because it was a request during the re-examination proceeding. That allows you to be a part of the re-exam. Why are you here in this court? You have to have, you know constitutional jurisprudence. You have to have a direct injury. Do you have one? Actually, Micron was sued for infringement on its patent. And so, yes, there is a direct injury. In this proceeding? Well, Micron filed the re-examination request. The examiner originally rejected the claim, then withdrew the rejection, and then Micron appealed, and then the board reversed the examiner. They appealed that, and the statute allows us to participate as an athlete. Okay. I think one of the problems with them trying to read this limitation into the claim that the amount of time is the exact amount from the read request, the received read request to the output of the data, is it's not in the claim. They could have said that in the claim if they wanted to, but instead all they said was an amount of time to transpire. They say in the reply brief that if this new limitation is not inserted into the claim, it would read out the preferred embodiment of the invention. And that's just not correct, because an amount of time to transpire would include that exact amount of time from the receipt of the read request to the output of the data. But an amount of time to transpire also includes many other amounts of time. It's not limited to that particular preferred embodiment. And, in fact, all the specific portions of the specification we cited show that this exact amount of time is just preferred. It's not required. Sorry, I have no more questions. Thank you. Thank you, Mr. Petrie. Mr. Barney, I think we'll be restored two minutes. Thank you, Your Honor. Just a few points. Judge Reyna, you asked counsel about the arbitration loss issue. And part of his response, he made the statement that in Figure 25A, the memory device would win arbitration every time. That's simply not correct. There's no device that can win arbitration every time. Arbitration depends on the instantaneous condition on the bus. So even though it's illustrated in Figure 25A and B as having won arbitration in the first instance, Figure 35 shows that in a real transaction across the Figure 25 configuration, you will have arbitration losses most of the time. And, in fact, Bennett says that's the normal situation, is that you will experience multiple arbitration losses before you finally win. With respect to Judge Moore, your question about the exact amount of time, I hesitate to beat a dead horse, but I do want to point out in Column 9, starting at Line 18, I believe there's a discussion there that does relate the word after to this idea of delivering the data at the specified time and if you just indulge me for a moment, I'll read from that paragraph. It says the data block transfer occurs later at a time specified in the request back of control information, preferably beginning on an even cycle. The device begins a data block transfer almost immediately with a device internal phase as a device initiates certain functions such as setting up memory addressing before the bus access phase begins. The time after which a data block is driven onto the bus line is selected from the values stored in the slave access time register. So it tracks exactly what the claim says in the context of the embodiment that requires it to go immediately and end immediately. Right, but the point there is it uses the word after. No, it doesn't just use after, it uses after which, which is what your claim uses, as opposed to the other one which just uses after. Correct. Yep. And other than that, unless you have other questions, we submit the case. Thank you, Mr. Barney.